Kerry P. Faughnan, Esq., NSB #12204
P.O. Box 335361
North Las Vegas, NV 89033
Telephone: (702) 301-3096
Facsimile: (702) 331-4222
Kerry.faughnan@gmail.com

Meghan A. Quinn, Esq.
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)
meghan.quinn@squirepb.com

*Attorneys for Defendant Nevada Holistic Medicine, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN NATIVIDAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEVADA HOLISTIC MEDICINE, LLC,<br><br>Defendant. | Case No. 2:21-cv-01863-RFB-NJK<br><br><br>**DEFENDANT NEVADA HOLISTIC MEDICINE, LLC'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |

Defendant Nevada Holistic Medicine, LLC ("Nevada Holistic") moves to dismiss Plaintiff's Class Action Complaint ("Complaint") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As detailed below, the Telephone Consumer Protection Act ("TCPA") is unconstitutional, both when the alleged text messages occurred and to this day. Thus, the statute cannot be enforced against Nevada Holistic, and the Court should dismiss the Complaint with prejudice for lack of subject-matter jurisdiction and for failure to state a claim. Even if that were not the case, the Complaint should still be dismissed for failure to state a claim because there is no private right of action for the internal do-not-call ("DNC") claim Plaintiff brings.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Complaint brings a single cause of action under the TCPA, alleging that Nevada Holistic failed to maintain and abide by an internal DNC list. The Complaint should be dismissed in its entirety for two independent reasons.

First, the TCPA is an unconstitutional statute that cannot be enforced against Nevada Holistic, and thus the Complaint should be dismissed for failure to state a claim and lack of subject-matter jurisdiction. When the TCPA was implemented in 1991, Congress found that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." [TCPA] of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227). But this balance was not achieved, resulting instead in an overly broad statute that regulated a wider variety of calls than was ever needed to protect consumer privacy. A number of content-based exemptions were included or added to try to trim it down to size, but these exemptions do not pass strict scrutiny and cannot be severed. Because the TCPA is an unconstitutional law, Nevada Holistic cannot be held liable for conduct that allegedly occurred under it.

Second, even if the TCPA were constitutional—which it is not—Plaintiff's single cause of action, an internal DNC claim, still fails for a simple reason: this claim does not exist. While Plaintiff purports to sue under 47 U.S.C. § 227(c) for a violation of 47 CFR § 64.1200(d), § 227(c) only permits a private right of action related to regulations prescribed pursuant to the FCC's authority afforded under that section of the TCPA. Yet the narrowly drawn powers enumerated by Congress in enacting § 227(c) do not include, *inter alia*, the power to mandate the creation of internal DNC policies and procedures found within § 64.1200(d). Rather, the Federal Communications Commission ("FCC") created the disclosure requirements of 47 C.F.R. § 64.1200(d) under 47 USC § 227(d), which expressly does not provide for a private right of action. On these grounds, the Complaint must be dismissed with prejudice.

1

## I.    **PLAINTIFF'S ALLEGATIONS**

The Complaint brings a single TCPA claim, alleging that Nevada Holistic has failed to maintain and abide by an internal DNC list. Plaintiff alleges that on November 17, 2020, he received a text message from Nevada Holistic that advertised the company's goods and services. (Compl. [ECF No. 1] ¶ 11).  Plaintiff alleges that he subsequently received five additional text messages from Nevada Holistic between May 4, 2021 and June 24, 2021, purportedly after he sent a text "in order to stop Defendant from continuing to send him text messages." (*Id.* ¶¶ 12-15). On these grounds, Plaintiff alleges that Nevada Holistic failed to maintain and abide by an internal DNC list in violation of 47 C.F.R. § 64.1200(d), and he seeks to represent a nationwide class on this basis. (*Id.* ¶¶ 24, 45-46).

## II.    **LEGAL STANDARD**

Dismissal is proper under Rule 12(b)(1) when a court lacks subject-matter jurisdiction. A Rule 12(b)(1) motion may be presented as either a facial or factual challenge to the court's subject-matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Although "the Court accepts as true all factual allegations and construes the pleadings in the light most favorable to the plaintiff," *Nat'l Coalition for Men v. Selective Serv. Sys.*, No. 13-cv-2391 DSF (MANx), 2016 WL 11605246, at *1 (C.D. Cal. Nov. 9, 2016), the burden is on the plaintiff to establish subject-matter jurisdiction, *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1151 (9th Cir. 2017).

Federal courts lack subject-matter jurisdiction over unconstitutional statutes because "a law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803); *see also Ex parte Siebold*, 100 U.S. 371, 376 (1879) (an unconstitutional law is "void, and is as no law"); *United States v. Baucum*, 80 F.3d 539, 540- 41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce.") (per curiam).

Furthermore, a complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal under Rule 12(b)(6). Under this rule, a complaint should be dismissed unless

it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed Because the TCPA Is Facially Unconstitutional Due to the Presence of Numerous Content-Specific Exemptions, and Thus Cannot Be Enforced against Nevada Holistic.

As demonstrated below, there are a number of content-specific exemptions to the TCPA that render the entire statute unenforceable. One such exemption—the government-debt exception—was addressed in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) ("*AAPC*"). The exemption was added to the TCPA in 2015, and it purported to except from liability calls "made solely to collect a debt owed to or guaranteed by the United States." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

On July 6, 2020, before Plaintiff filed the instant action, the Supreme Court held that the government-backed debt exception—added in 2015—impermissibly treated speech to collect a debt issued or guaranteed by the federal government more favorably than other forms of speech, in violation of the First Amendment. *AAPC*, 140 S. Ct. at 2343, 2347. The Court severed the government-backed debt exemption prospectively. *Id.* at 2343. Only the government-backed debt exemption was before the Court in *AAPC*—the Court did not consider any of the other content-based exemptions contained within the TCPA.

*AAPC*'s severance of the government-debt exemption clearly demonstrated that content-specific exemptions to the TCPA raise major constitutional infirmities and must be addressed. The TCPA's multiple content-based exemptions that were *not* raised or considered in *AAPC* are overly broad, violate the First Amendment, and cannot be severed to save the statute. Because the TCPA was unconstitutional when the alleged calls occurred and remains unconstitutional to this day, this

Court should dismiss Plaintiff's Complaint with prejudice for lack of subject-matter jurisdiction and for failure to state a claim.

### 1.   The TCPA is Riddled with Content-Specific Exemptions.

The TCPA itself is, by nature, a content-specific restriction on speech: its purpose is to restrict and create differential treatment for communications that constitute marketing or solicitations. Nowhere is this more evident than with respect to DNC claims, which are generally brought pursuant to the notion that a plaintiff has registered his or her residential telephone number on the "national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2).

But this is by no means the only unconstitutional element of the statute. The text of the TCPA, and the FCC's implementation of it, contain numerous content-based restrictions that were not severed (or addressed) in *AAPC*. These include exemptions for: i) emergency calls;[1] ii) "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged";[2] iii) certain healthcare-related calls;[3] iv) certain package-delivery notifications;[4] v) schools to communicate with students and parents;[5] and vi) certain messages by banks pertaining to fraud.[6] Additionally, the requirement of a higher level of consent for calls made for a marketing purpose rather than calls made for an informational purpose creates another content-based distinction.[7] Like the government-backed debt exemption at issue in *AAPC*, each and every one of these exemptions renders the TCPA an unconstitutional content-specific restriction on speech. *AAPC*, 140 S. Ct. at 2347; *Reed v. Town of Gilbert*, 576 U.S. 155, 162 (2015).

---

[1] 47 U.S.C. § 277(b)(1)(A) (emergency calls).

[2] 77 Fed. Reg. 34233, 34236 (June 11, 2012).

[3] 47 C.F.R. § 64.1200(a)(3)(v).

[4] *In re Cargo Airline Ass'n*, 29 FCC Rcd 3432, 3437-3438 (2014).

[5] *In re Rules & Regs. Implementing [TCPA] of 1991*, CG Docket No. 02-278, FCC 16-88 (Aug. 4, 2016).

[6] 30 FCC Rcd 7961, 8025 (2015).

[7] 30 FCC Rcd at 7968.

MOTION TO DISMISS
*Case No. 2:21-CV-01863-RFB-NJK*

The implementing regulations of the TCPA also create a *per se* content-specific restriction on speech for "telephone solicitation[s]"

### 2.   The Content-Based Exemptions Do Not Survive Strict Scrutiny.

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The burden is on the party defending a content-based restriction to advance evidence that the harms Congress identified are real. *Id.*; *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."). In *AAPC*, the Supreme Court recently conceded that "collecting government debt"— though a "worthy goal"—"cannot satisfy strict scrutiny." 140 S. Ct. at 2347.

Similarly, none of the other content-based exemptions remaining in the TCPA can survive strict scrutiny. Even the "emergency purposes" exemption, which comes closest, is so ephemeral as to remain both an under- and over-inclusive restriction on speech. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The others do not come close. While many of the FCC's exemptions—i.e., healthcare, package delivery, or fraud notification messages—look at "urgency" or the need for "time sensitive" communication, they can hardly be considered "narrowly tailored" to a "compelling" governmental interest. *See Reed*, 576 U.S. at 163.

### 3.   The TCPA's Additional Content-Based Exemptions Should Not—and Cannot—Be Severed to Save the Statute as Applied to Nevada Holistic.

The Supreme Court adopted a novel approach to a difficult problem in AAPC. The TCPA's content-based government-debt exception (like the many content-based exceptions discussed above) plainly did not survive First Amendment scrutiny. Yet, while existing precedent suggested the First Amendment only moved "one way"—i.e., toward protecting speech—the Court recognized that the First Amendment sometimes operates merely as an ironing board: assuring that individuals are permitted to speak equally. *See AAPC*, 140 S. Ct. at 2346.

As *AAPC* represents the Supreme Court's first pass with this new doctrine, the limits of its application have not yet been explored. While *AAPC* certainly forecloses any argument that the

MOTION TO DISMISS
*Case No. 2:21-CV-01863-RFB-NJK*

TCPA is unconstitutionally applied due to the single content-based exception addressed in that case, nothing in the *AAPC* ruling mandates that a statute containing *numerous* content-based exceptions should always survive constitutional scrutiny.

Here, for instance, in order to save the TCPA, this Court would have to sever the *seven* separate exemptions discussed above. The Court severed the single exemption in *AAPC* in recognition that Congress likely intended that result, since that exemption was a bolt-on provision added late in the statute's life. *See* 140 S. Ct. at 2356. But many of the TCPA's other content-specific exemptions have existed for much longer and have persisted through multiple amendments to the statute.[8] There is no basis to conclude that Congress's intent would be to uphold the TCPA if its provisions were applied with complete uniformity to marketers and debt collectors on the one hand and schools, hospitals, and delivery companies, and banks delivering fraud notifications on the other.

Moreover, there remains significant doubt that this Court could sever the TCPA exemptions even if it wanted to, as the Hobbs Act appears to deprive courts of jurisdiction to sever FCC exemptions.[9] If the exemptions cannot be severed, the statute is unconstitutional due to its numerous content-based restrictions that do not survive strict scrutiny, and cannot be saved.

Finally, and most basically, *AAPC*'s recognition that the First Amendment is "a kind of Equal Protection Clause for ideas" is at tension with basic concepts of free speech and due process. *See AAPC*, 140 S. Ct. at 2354 (citation omitted). The First Amendment does not assure equal speech; it assures free speech. And while Nevada Holistic does not dispute *AAPC*'s holding that severance

---

[8] The TCPA was amended in 2003 and again in 2015. *See* CG Docket No. 02-278, FCC 03-153; Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584; *see, e.g.*, 77 Fed. Reg. at 34235.

[9] Although the application of the Hobbs Act as a bar to judicial review of agency action was in some doubt following the Supreme Court's ruling in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2054-56 (2019), this and other courts have noted that litigators "cannot place much reliance on the opinion, because all it did was remand the case to the lower courts in order to address two 'preliminary issues,'" and "the Seventh Circuit instructs that district courts must presume the agency actions are 'valid.'" *Ind. R.R. Co. v. Ill. Commerce Comm'n*, 491 F. Supp. 3d 344, 349-50 (N.D. Ill. 2020) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010)).

is an appropriate remedy in some cases—such as to assure that certain favored speakers are brought back within the restrictions that apply to everybody else where, as here, so much speech is being excepted from liability on a content-specific basis—it demonstrates that the restriction on speech itself was overly broad to begin with and a different remedy ought to apply.

Here, as demonstrated by its numerous carve-outs, the TCPA is not narrowly tailored to a compelling government interest, but is fashioned extremely broadly to cover both *wanted* and *unwanted* calls alike, and in doing so paints marketing and solicitation communications with an overbroad brush.[10] These carve-outs do not further the underlying purpose of the statute—to protect consumer privacy—but rather reflect that certain calls regulated by the statute *did not infringe upon that interest to begin with*.

*AAPC* squarely compels a determination that the TCPA's numerous content-based exemptions must be struck down unless they survive strict scrutiny, which they do not. Nevada Holistic, therefore, is entitled to one of two remedies: i) either all of the TCPA's content-based restrictions must be struck down and the statute must be expanded to apply uniformly; or ii) the TCPA must be struck down as an overly broad and unconstitutional restriction on speech. In the absence of any evidence that Congress would want the restrictions of the TCPA to apply so broadly—and given the Court's likely lack of jurisdiction to sever FCC exemptions under the Hobbs Act—Nevada Holistic submits that the second course is the most prudent and appropriate.

**B.     Plaintiff's Only Claim—an Internal DNC Claim—Fails Because No Private Right of Action Exists to Enforce 47 C.F.R. 64.1200(d).**

Plaintiff claims that Nevada Holistic violated 47 C.F.R. § 64.1200(d) by failing to implement and abide by an internal DNC list. (Compl. ¶ 45). Though Plaintiff purports to bring his claim under 47 U.S.C. § 227(c) of the TCPA, § 64.1200(d) was enacted pursuant to 47 U.S.C. § 227(d), which provides the technical and procedural standards for TCPA compliance and, notably, does not create a private right of action. *See* 47 U.S.C. § 227(d); *see also Burdge v. Assn Health Care Mgmt.*, 2011 U.S. Dist. LEXIS 9879, at *10 (S.D. Ohio Feb. 2, 2011) ("[T]he

---

[10] While the statute affords a defense for "consented" calls, *see* 47 U.S.C. § 227(b)(1)(A), not all uninvited calls are unwanted, or vice versa.

MOTION TO DISMISS
*Case No. 2:21-CV-01863-RFB-NJK*

regulations regarding identification and the provision of a telephone number or address found in 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA."). This makes sense because § 227(c) is limited to "telephone solicitations," which exempts certain entities, while § 64.1200(d)—similar to the provision it was promulgated under (§ 227(d))—applies, without such exemptions, to "any call for telemarketing purposes."

The parallel scope of § 227(d) and § 64.1200(d) make clear that § 64.1200(d) was enacted under § 227(d), not § 227(c). Section 227(d) addresses certain restrictions related to the content of messages, specifying that communications must comply with "the technical and procedural standards prescribed under this subsection." 47 CFR § 64.1200(d), then, prescribes those technical and procedural standards, specifying that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity" before listing the "minimum standards" that the procedures must meet.

On the other hand, the scope of § 227(c) is entirely distinct from the scope of § 64.1200(d). Section 227(c) is limited to "telephone solicitations," which exempts certain entities, while § 64.1200(d)—similar to the provision it was promulgated under (§ 227(d))— applies, without such exemptions, to "any call for telemarketing purposes." A comparison of the language and scope of the statute and implementing regulations indicate that Congress did not intend to create a private right of action for violations of the standards delineated in § 64.1200(d). Indeed, in its original 1992 Order promulgating regulations pursuant to the TCPA, the FCC expressly linked its issuance of § 64.1200(d) to its authority under 227(d) and *not* 227(c). *In re Rules & Regulations Implementing the TCPA of 1991*, 7 F.C.C.R. 8752, 8758-61 (1992) ("The TCPA mandates that all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), and we adopt this requirement in our rules, 64.1200(d)."); *see also Burdge*, 2011 U.S. Dist. LEXIS 9879, at *10.

Though some courts—such as *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) and *Drew v. Lexington Consumer Advocacy, LLC*, 2016 U.S. Dist. LEXIS 52385, at *34 (N.D. Cal. Apr. 18, 2016)—have found that § 64.1200(d) was promulgated under § 227(c), those cases did not analyze the limitations of the federal regulations, which expressly identify the provisions of § 64.1200(d) as "procedures" for DNC policies, and the language of the statutory sections, which identify § 227(d) as "technical and procedural standards." *See Nece v. Quicken Loans, Inc.*, 2018 U.S. Dist. LEXIS 42356, at *23 (M.D. Fla. Mar. 15, 2018). Accordingly, courts have expressly rejected *Charvat* and *Drew* and instead followed the chorus of decisions holding that § 64.1200(d) falls under the purview of § 227(d). *See, e.g.*, *Braver v. NorthStar Alarm Servs., LLC*, 2019 U.S. Dist. LEXIS 118080, at *35 (W.D. Okla. July 16, 2019) (declining to rely upon *Charvat*).

Section 227(d), unlike other portions of the TCPA, does *not* include a private right of action. *Compare* 47 U.S.C. § 227(b)(3) (expressly providing for private right of action for violations of that subsection and regulations prescribed thereunder), *and* § 227(c)(5) (expressly providing for private right of action for violations of FCC regulations promulgated pursuant to that subsection), *with* § 227(b) (containing no private right of action ); *see Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d)."); *j2 Glob. Communs., Inc. v. Protus IP Sols.*, 2008 U.S. Dist. LEXIS 126245, at *22 (C.D. Cal. Jan. 14, 2008) (finding that § 227(d) does not authorize a private right of action). And because 47 C.F.R. § 64.1200(d) was adopted pursuant to § 227(d), rather than § 227(b) or 227(c), § 64.1200(d) does not have a private right of action either and can only be enforced by the government. *See, e.g.*, *Braver*, 2019 U.S. Dist. LEXIS 118080, at *35 (holding "[t]here is no private right of action for alleged violations of §64.1200(d)"); *Burdge*, 2011 U.S. Dist. LEXIS 9879, at *10 (dismissing claims "[b]ecause [§ 227(d)] of the TCPA does not contain a private right of action").

Here, Plaintiff's only cause of action alleges that Nevada Holistic violated 47 C.F.R. § 64.1200(d)'s procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists. *See* Compl. ¶¶ 40-46. Since 47 U.S.C. § 227(d) does not contain a private right of

action, Plaintiff cannot state a claim for violations of 47 C.F.R. § 64.1200(d)'s procedural standards. Accordingly, Plaintiff's sole claim against Nevada Holistic necessarily fails and should be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, and for any other reasons that may appear to the Court, Nevada Holistic respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice.

RESPECTFULLY SUBMITTED this 29th day of December, 2021.

By: <u>Kerry P. Faughnan</u>
Kerry P. Faughnan, Esq., NSB #12204
P.O. Box 335361
North Las Vegas, NV 89033
Telephone: (702) 301-3096
Facsimile: (702) 331-4222
Kerry.faughnan@gmail.com

Meghan A. Quinn, Esq.
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)
meghan.quinn@squirepb.com

*Attorneys for Defendant*
*Nevada Holistic Medicine, LLC*

1

## CERTIFICATE OF SERVICE

2

   I certify that on December 29, 2021, I allowed the Court ECF system to serve a true and

3

correct copy of the foregoing to the following interested parties:

4

5   David Krieger, Esq.
    KRIEGER LAW GROUP LLC
6   2850 W. Horizon Ridge Parkway, Ste. 200
    Henderson NV 89052

7   Manuel Hiraldo
    Hiraldo P.A.
8   401 E. Las Olas Blvd Ste 1400
    Ft. Lauderdale, FL 33301

9
    dkrieger@kriegerlawgroup.com, 8076479420@filings.docketbird.com,
10  graham@kriegerlawgroup.com, ign@nvbankruptcyattorneys.com,
    kriegerlawgroupllc@jubileebk.net, smiller@kriegerlawgroup.com,
11  ymlvuvib@mailparser.io

12  Attorneys for Plaintiff

13  DATED December 29, 2021.

14                                                   /s/ Kerry P. Faughnan_____
                                                     Kerry P. Faughnan, Esq.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
*Case No. 2:21-CV-01863-RFB-NJK*